KYREESE L. FRANKLIN, Appellant, v CARMEN ROSA GAREYUA et al., Respondents. [24 NYS3d 304]—

Order, Supreme Court, Bronx County (Fernando Tapia, J.), entered June 17, 2014, which, insofar as appealed from, granted defendants' motion for summary judgment dismissing plaintiff's claim that he suffered a serious injury to his left shoulder within the meaning of Insurance Law § 5102 (d), affirmed, without costs.

Plaintiff's appellate brief does not challenge Supreme Court's determination that defendants made a prima facie showing that plaintiff did not suffer a serious injury to his left shoulder as a result of the motor vehicle accident at issue. Defendants submitted the affirmed reports of a radiologist and orthopedic surgeon, who opined that the conditions present in his left shoulder were degenerative in nature and unrelated to any trauma (see Alvarez v NYLL Mgt. Ltd., 120 AD3d 1043, 1044 [1st Dept 2014], affd 24 NY3d 1191 [2015]). Defendants also submitted plaintiff's own medical records, which found arthrosis and no traumatic injury (id.). Specifically, Jeffrey N. Lang, M.D., opined in a radiological report to plaintiff's treating orthopedic surgeon that the postaccident X ray of plaintiff's left shoulder showed "no evidence of a fracture or other focal osseous abnormality" nor any evidence of "dislocation." In addition, an MRI report to plaintiff's treating orthopedic surgeon by Jack Lyons, M.D., opined that the postaccident MRI of the left shoulder, while it revealed "mild AC joint arthrosis and malalignment of the AC joint" and mild bursitis, showed "no evidence of fracture, dislocation, or bone marrow abnormalities to be suspicious for bone contusions, stress fractures, or acute trabecular microfractures." The plain import of the reports by Dr. Lang and Dr. Lyons—both of which, to reiterate, were prepared at the request of plaintiff's treating orthopedic surgeon and are included within his own medical records—is that the X ray and MRI of his left shoulder showed no evidence of traumatic injury but only of degenerative conditions such as arthrosis and bursitis.

In opposition, plaintiff failed to raise a triable issue of fact as to causation. His treating orthopedist, Louis C. Rose, M.D., did not refute or address the findings of preexisting degeneration and lack of traumatic injury, set forth in the reports by Dr. Lang and Dr. Lyons contained in plaintiff's own medical records (as described above), nor did Dr. Rose explain why degeneration was not the cause of the left shoulder injury (see Alvarez, 120 AD3d at 1044; Paduani v Rodriguez, 101 AD3d 470, 471 [1st Dept 2012]). Given that Dr. Lang and Dr. Lyons

plainly reported that no evidence of traumatic injury was found in the X ray and MRI of the left shoulder, it is immaterial that their reports did not use the word "preexisting" to describe the degenerative conditions that were detected.

The dissent, taking the position that an issue of fact exists as to whether the accident caused plaintiff's shoulder injury, does not deal with the aforementioned opinions of Dr. Lang and Dr. Lyons in plaintiff's own medical records. It appears to be the dissent's view that the support in plaintiff's medical records for the shoulder injury having a degenerative origin are of no moment because plaintiff's medical expert, Dr. Louis C. Rose, in his affirmation prepared for this litigation, offered a "diagnosis [that] . . . contrasts significantly with the one proffered by defendants' experts." However, the dissent offers no support for its view that there is a "factual disagreement" between the defense experts and plaintiff's expert (Dr. Rose) on the diagnosis of the shoulder injury, as opposed to its etiology. Specifically, the dissent simply assumes that the defense experts' diagnosis of osteoarthritis of the AC joint and chronic impingement syndrome were inconsistent with the presence of tears to the labrum and rotator cuff, which was Dr. Rose's diagnosis. Nothing in the record supports the assumption that the conditions diagnosed by the defense experts do not result in tears to the labrum and rotator cuff.

We have considered plaintiff's remaining contentions and find them unavailing. Concur—Tom, J.P., Friedman and Andrias, JJ.

Gische and Kapnick, JJ., dissent in a memorandum by Gische, J., as follows: I agree with the majority that it was incumbent upon plaintiff to address the issue of causation in opposition to defendants' motion. However, I dissent with respect to the majority's conclusion that plaintiff did not provide sufficient evidence to raise a question of fact as to whether the injuries were the product of a degenerative condition or causally related to the accident.

Plaintiff alleged injuries to his left shoulder following a rear-end collision in which defendants' automobile struck his vehicle while he was stopped at a red light. A day after the accident, plaintiff sought treatment with an orthopedic surgeon, Dr. Louis C. Rose, to whom he complained of shoulder, neck, and back pain. During his initial evaluation, in addition to finding range of motion limitations in plaintiff's left shoulder, Dr. Rose also noted tenderness of the AC joint and a rotator cuff insertion with impingement. Plaintiff informed Dr. Rose that he had no previous orthopedic injuries and had been active before the accident.

When plaintiff's symptoms worsened, Dr. Rose ordered an MRI, which revealed malalignment of the AC joint with impingement and tendon bursitis. After reviewing the results of the MRI, Dr. Rose recommended that plaintiff undergo arthroscopic surgery. During the procedure performed by Dr. Rose, he observed and took intraoperative photos showing an internal derangement of the left shoulder with a partial tear of the glenoid labrum, a tear of the rotator cuff, and hypertrophic synovium with acromioplasty. Based upon his treatment of the plaintiff over a two-year period, commencing immediately after the accident, his own independent review of the MRI results, the intraoperative findings that he observed firsthand, and unimproved range of motion, Dr. Rose concluded, with a reasonable degree of medical certainty, that the left shoulder injuries were causally related to the rear-end impact of the car accident.

In the first instance, the diagnosis rendered by plaintiff's expert contrasts significantly with the one proffered by defendants' experts. While defendants' medical professionals diagnosed osteoarthritis of the AC joint and opined that the surgical findings and symptomatology were consistent with chronic impingement syndrome, Dr. Rose diagnosed tears to the labrum and rotator cuff. The parties' factual disagreement on the correct diagnosis of plaintiff's left shoulder condition necessarily supports the varying opinions regarding causation and underscores that the issue cannot be resolved by summary adjudication. By ascribing the injuries to a different, yet equally plausible explanation (i.e., the accident), plaintiff created a triable issue of fact as to whether the accident caused a serious injury to his left shoulder (*Camacho v Espinoza*, 94 AD3d 674, 674 [1st Dept 2012]; *Caines v Diakite*, 105 AD3d 404, 404 [1st Dept 2013]). The majority posits that the defense experts' diagnoses of a degenerative condition may not be inconsistent with plaintiff's expert's findings of tears to the labrum and rotator cuff. Given defendants' experts' complete failure to reference or diagnose any tears, this conclusion is speculative.

In addition, plaintiff submitted objective medical evidence demonstrating that the onset of symptoms and range of motion limitations only occurred immediately after the accident, and have since not abated, which generally supports his expert's opinion that the accident caused the injuries (*Eteng v Dajos Transp.*, 89 AD3d 506, 507-508 [1st Dept 2011]). Contrary to the majority's view, plaintiff did not have to employ any specific language to rebut defendants' experts' findings that the injuries

were preexisting and degenerative in nature in order to create an issue of fact (*Linton v Nawaz*, 62 AD3d 434, 443 [1st Dept 2009], *affd* 14 NY3d 821 [2010]; *Grant v United Pavers Co., Inc.*, 91 AD3d 499, 500 [1st Dept 2012]). Given the substantial nature of the proof proffered by Dr. Rose, he was not required, as the majority suggests, to reconcile his conclusion with findings reached by two of plaintiff's radiologists who detected no signs of acute traumatic injury in the left shoulder upon initial imaging (*cf. Alvarez v NYLL Mgt. Ltd.*, 120 AD3d 1043, 1044 [1st Dept 2014], *affd* 24 NY3d 1191 [2015]). In non conclusory terms, Dr. Rose, who was plaintiff's treating physician, attributed the injuries to an entirely different etiology by chronicling his initial examination of plaintiff the day after the accident, his consequent need for surgery, during which time Dr. Rose personally observed and repaired tears, and the persisting deficit limitations in the years since. Dr Rose's opinion that the left shoulder condition was consistent with traumatic injury resulting from the accident, signifiying an "unmistakable rejection of defendants' experts' theory" is entitled to equal weight and sufficed to raise a triable issue of fact (*Linton*, 62 AD3d at 443; *Yuen v Arka Memory Cab Corp.*, 80 AD3d 481, 482 [1st Dept 2011]).

Similarly, plaintiff did not have to expressly negate the presence of degenerative findings because there was other evidence in the record that he had been asymptomatic before the accident, had denied sustaining any previous orthopedic injuries, and had provided an explanation for why defendants' experts' findings did not conclusively establish the cause of the claimed injuries (*Jeffers v Style Tr. Inc.*, 99 AD3d 576, 577 [1st Dept 2012]). To the extent that the medical evidence offered by the parties in support of their respective positions cannot be reconciled, such conflicting opinions require credibility determinations that fall within the purview of a trier of fact to resolve (*Clindinin v New York City Hous. Auth.*, 117 AD3d 628, 629 [1st Dept 2014]).

Accordingly, I would reverse the motion court's order and deny defendant summary judgment because there are issues of fact regarding whether plaintiff's left shoulder injury was a serious injury within the meaning of the Insurance Law.